that the clearly plain evidence and indisputable weight of the evidence in this case compels the conclusion that Mr. Garcia's current condition of ill-being is possibly related to the injury he sustained in February 2005. Is that what Dr. Wehner said? That's not what Dr. Wehner said, Your Honor, and what Astoria argues is that this is a classic case where the Commission weighed conflicting opinions of the medical expert. But that's not quite the case here. The Commission did not reverse the arbitrator. It affirmed the arbitrator and made modifications. The portions of the arbitrator's decision which the Commission left unaffected clearly show that the Commission agreed with the arbitrator's rejection of the opinion. In other words, why are you appealing? It then said that the condition by December of 2006 was no longer possibly related. Well, Warren, in that decision lies the flaw. It's undisputed, I think, even by the Respondent, that the claimants sustained the worker-related injury on February 4, 2005. That's not indisputable. As I understand it, after the accident, your client sought medical treatment for his back on a consistent basis. In January 2006, he began reporting improvement in his condition to Dr. Treister. And then on February 21, the claimant reported to Dr. Treister his lower back was feeling much better. He had no complaints of pain, weakness, numbness, anything like that. Did not seek further medical treatment for his back until almost 10 months later. Your Honor, at the time that he last saw Dr. Treister, in February of 2006, he did report improvement. He was still taking medication at that time, which the doctor had prescribed. The doctor imposed work restrictions, and the doctor at that time said you could have a flare-up of your pain requiring surgery. Thereafter, my client searched for suitable employment within his restrictions, which he did not find until late spring. He worked for four weeks until they wanted to move him to a position where his restrictions would be exceeded. And then he didn't work after that. So you're asserting he reached MMI when? That he hadn't reached MMI. Until when? That as of this date, he has not reached MMI. Because what's most important, in addition to the fact that the doctor noted he needed restrictions and could require surgery in the future, Mr. Garcia testified that he continued to experience ongoing pain, and he respected those restrictions. He was prompted to come back to the doctor without any intervening accident. And the doctor, what's most important is that the doctor noted that the pathology he found in December of 2006 was exactly where it had existed back in early 2005. It was just more dramatic. How do you explain the argument or his position that the claimant, again, had related there was no pain, there were no weaknesses, numbness, Dr. Treater discharged him from care? But again, with the caveat, you have a disc herniation, this could flare up and require surgery, and you cannot do heavy lifting, repetitive bending, and you have to limit your work to those kinds of activities. Okay, so we have experts conflicting medical opinions. I don't believe we do. We had conflicting experts. The commission clearly rejected the opinions of Dr. Wenner and Zellbe. Had it not, it would never have awarded my client a temporary total disability compensation and medical expenses. Through February of 2006, Dr. Zellbe had seen him in late February of 2005, at which time he said he needed two to four weeks of physical therapy and then could resume full duty. Dr. Wenner saw him in May 2005, at which time she said he needs a little more treatment and can resume full duty work. The arbitrator clearly rejected their opinion, and the commission affirmed that portion of his decision by awarding compensation up to February of 2006. So the arbitrator and the commission also awarded prospective medical. Isn't that correct? The arbitrator awarded prospective medical. The commission did not. What did they say we do not? Well, the commission, I believe, said that any medical expenses after February 21, 2006 were not the respondent's responsibility. In the middle of page 2, it says that the commission finds that all medical incurred after February 21, 2006 is not the responsibility of the respondent. Well, if the commission believes Dr. Wenner, does that solve the case? Well, it would be completely inconsistent with the rest of the award. What do you mean the rest of the award? Well, that the commission affirmed that portion of the award for medical and for temporary total disability benefits up until February 2006. Dr. Wenner, back in May of 2005, said he needed no further treatment. She didn't even concede that he was suffering from a herniated disc when she saw him in May of 2005. The commission clearly rejected that opinion. I don't know what you're complaining about. Well, because the commission cut off all benefits as of February 2006. It took away the award of temporary total disability benefits and medical benefits, including prospective surgery, as of February 2006. I thought I read the commission's decision to say it was remanded back to the arbitrator concerning any other temporary total disability and other related expenses. That's simply the standard language used in the commission decisions dealing with 19B awards. What does it mean? Does it mean what it says? Well, Your Honor, since the commission said that all medical after February 21, 2006 was not the responsibility of the respondent, the petitioner would be precluded from coming in to argue that medical after that date would be respondent's position unless the commission decision was fulfilled. Let me get back to the threshold question. The commission determined the claimant reached MMI as of February 21, 2006, correct? It made that statement, yes, Your Honor. But, Your Honor, respectfully, the commission seemed to have made that determination based solely on the lapse of time. And as the Montgomery Elevator case cited in our brief makes clear, lapse of time isn't enough to destroy causal connection. All right. To prove temporary total disability, the evidence has to establish not only that the claimant did not work but that he was unable to work, correct? Correct, Your Honor. Where in the evidence here does it establish that the claimant was unable to work after February 21, 2006? The claimant was given permanent restrictions by his physician. And he returned to work, didn't he? He did for a four-week period. Okay. Because he was able to find a job within his restrictions during that period. They then wanted to increase his duties, and he refused that portion. Then, without any other event, his back pain increased to the point where he could not, where his doctor said he could not work at all. And that was your position, that the opposite conclusion to one drawn by the commission is clearly apparent. That's what you're telling us, right? Yes, Your Honor, based on the medical evidence and the opinions of the treating doctor, if we don't have the opinions of Dr. Wenner and Zellbe to explain the decision, then there is no other supporting evidence. Was he still under treatment with Dr. Treister, who was his treating doctor, up and through February 6 or February? Of 2006, yes, he was. He was? He was. Under continuing treatment? Under continuing treatment until that date. And on that date, he asked to be released because he was not receiving benefits and wanted to look for a job. And that was when the doctor said, you have restrictions on the kind of work you can do, and you could need surgery in the future. But he also told Treister he wasn't experiencing any problems, didn't he? He said he was feeling better at that time. He had no acute problems, but as I said, he was still under medication at that time. Well, is that enough for the defined MMI on that date by the commission? If I'm understanding the dates correctly. I think you have to look at this. It would have been enough, I believe, Your Honor, had there been no subsequent events. But sometimes doctors' determinations, an initial determination that someone is at MMI, is later changed or clarified by virtue of what happens afterwards. A doctor may believe someone is at MMI, send that person back to work, and then when the person has difficulties, say he does not. And that's what, in essence, Dr. Treister is saying here. And Dr. Treister explained how physiologically, someone with a herniated disc, just through its natural course, can become more symptomatic over time. So for those reasons, the petitioner would request that to the extent that the commission modified the arbitrator's decision. Thank you, counsel. Counsel, please. Good morning, Your Honor. Elizabeth Caporetti on behalf of the appellant. Good morning, counsel. I have a question. Certainly. Assuming that February of 06, the commission's decision of MMI stands, what is there to justify the commission's taking away prospective medical treatment? I believe it is coupled with the fact that he was placed at MMI and that there was a failure to prove by preponderance of the weight of the evidence that the condition of ill being as it stood in December was an aggravation and part of the initial injury. I believe what he suffered from was degenerative disc disease. So it was the fact that there was this time period where the petitioner did not receive treatment and he had actually been placed at MMI by Dr. Treister and the medical records are very clear. In February, right? In February of 06, he was placed at MMI. But now you're going back to December of 05, right? No, I'm going forward to December of 06 when he then goes back to Dr. Treister. There's a nine-month period and he's having ongoing problems. The question is, are those ongoing problems related to the initial injury or are those ongoing problems due to his degenerative disc disease? And what I am saying is that the commission correctly found that there was not enough evidence to support that the ongoing problems in December of 06 were merely nothing but his ongoing degenerative process. Did the commission actually make that find? Did they articulate that? Relative to the degenerative process, no. I think it is a reasonable inference from what is said in the medical records. Specifically, what evidence supports that, that it was due to degenerative disc disease as opposed to the accident in February? Both Dr. Zellbe and Dr. Weiner specifically stated that the MRI findings were consistent with degenerative disc disease. I think Dr. Treister even testified to the same thing himself. He gave ongoing testimony that the discs were consistent with degenerative disc disease. I also believe Dr. Kim, who initially saw the petitioner from Dr. Treister's office on the initial evaluation in March, specifically stated that the petitioner was suffering from a lumbar strain and degenerative disc disease. I think that the fact that he was thusly placed at MMI in February of 06 where he had no problems, I mean, the records are very clear that he had no sensory deficits, he had no motor weakness. I mean, Dr. Treister himself called the exam benign and said, I'm discharging you from care. I think that coupled with the opinions of Dr. Weiner and Dr. Zellbe are the findings and the basis for the commission that it was a degenerative disc disease. So is it your argument then that he suffered from a temporary aggravation of his preexisting degenerative disc disease, which then reached MMI? Is that basically what it was down to? That's exactly correct. That's exactly correct. And I believe that the manifest weight of the evidence supports that. Because there was no other accident or, I mean, he was sitting in a chair in class. That's correct. There's no other claim that anything else caused his ongoing problems. That is correct. I mean, there's nothing. I mean, he did go back to work for a brief period of time, I believe, in a stocking or in a warehouse. And he also had a brief period as a chauffeur. And then he was obtaining tax preparation classes. And it is specifically then that he said he was arising from a chair and he felt this significant pain, which prompted him to go back to Dr. Treister. So, yes, that is exactly the argument. And I certainly believe that the opinions of both Dr. Weiner and Dr. Zellbe do support that. And this is a classic case of where the commission weighed opinions. Said, you know, we appreciate what the arbitrator says, but we read the evidence differently. And we find that there is no causal relationship. And I appreciate the fact that the commission did affirm and adopt the opinions of the arbitrator outside of the causal relationship. But they specifically said there's no causal relationship. And Arbitrator Glisha in making that finding said he weighed Dr. Weiner and Dr. Zellbe versus that of Dr. Treister. I would say by the fact that the commission specifically made the opposite finding, that they, in fact, weighed the evidence differently, that being Dr. Weiner and Dr. Zellbe. Which was within their province to do. Pardon me? Which was within their province to do. Yes. I mean, I believe that the commission did exactly the job that they're tasked to do, which is to weigh the credibility of the evidence. And they saw it differently than the arbitrator. And they found that there was no causal relationship to the initial accident. And that his ongoing problems were not related to that. I would submit, then, that the decision of the commission should be affirmed. Unless you have any other questions for me. Thank you. Thank you. The panel, please. Just briefly, with regard to the comments about degenerative disc disease, it is clear from the medical records that Mr. Garcia was diagnosed with degenerative disease at the time that his herniated disc was diagnosed, shortly after the accident. But it is also undisputed that there is no history of any back problems or treatment prior to this accident. While both Drs. Zellbe and Weiner said this is a minor back strain attributable to the disc disease, they ignored the findings of the MRI, which showed a clear herniated disc, as well as clinical evidence later of nerve root pathology. And the fact that that same problem was present in December of 2006 indicates that this was not just a minor strain or a degenerative disease. It was the same problem that had been diagnosed. And obviously the commission agreed that it was more than just a minor strain and a temporary aggravation of degenerative disc disease, or it would not have awarded benefits up through February of 2006. Thank you. Thank you, counsel. The court will take the matter under advisement for disposition.